# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5122 | **DATE** | 12/7/2004 |
| **CASE TITLE** | Henry vs. City of Chicago, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court denies both the Plaintiff's and Defendants' motions for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 8 2004 | |
| | Notified counsel by telephone. | | date docketed | 64 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | 2004 DEC -7 PM 4:23 U.S. DISTRICT COURT | date mailed notice mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MISTY HENRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 5122 |
| v. ) | |
| ) | |
| CITY OF CHICAGO,[1] ) | |
| ) | |
| Defendant. ) | |

DOCKETED
DEC 0 8 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Misty Henry filed a one count First Amended Complaint against Defendant City of Chicago alleging sexual discrimination in violation of Title VII, 42 U.S.C.A. § 2000e *et seq.* Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court denies both motions.

### I. UNDISPUTED FACTS

On September 28, 1998, the City of Chicago hired Plaintiff Misty Henry as a police officer in the Chicago Police Department ("CPD"). (R. 50-1, Def.'s Rule 56.1 Statement of Material Facts ¶ 2.) In May 2001, Officer Henry joined the second watch of a bike patrol team, a small unit within the Fourth District, which was comprised of approximately eight officers supervised by Sergeant Maurice Richards. (R. 58-1, Pl.'s Statement of Add'l Facts, ¶ 36; Def.'s Stmt. ¶ 4.) The CPD also assigned Officers Rufus James, William Green, and Silk Williams to

---

[1] The Court previously dismissed the Chicago Police Department ("CPD") from this action because the CPD does not have a separate legal existence independent from the City of Chicago. *See Acheampong v. City of Chicago,* 128 F.Supp.2d 560, 562 (N.D. Ill. 2001).

the second watch on bike patrol. (Def.'s Stmt. at ¶ 5.) At her deposition, Officer Henry testified that soon after she began her assignment on bike patrol, Officers Green and James subjected her to unwelcome and offensive comments on a daily basis ranging from "sexual talk" to demeaning comments about her personal appearance. (Pl.'s Stmt. Add'l Facts ¶ 37.) Officer Silk Williams, a female, also testified that Officer James engaged in "sex talk" while working on the bike unit. (*Id.* at ¶ 40.) Officer Williams further testified that Officer James' conduct toward Officer Henry was not unusual. (R. 51-1, Pl.'s Rule 56.1 Statement of Material Facts, at ¶ 7.) On the other hand, Sergeant Richards testified that he had never seen Officer James engage in "sex talk" while on bike patrol. (Pl.'s Stmt. Add'l Facts at ¶ 45.) Instead, Sergeant Richards testified that Officer James was outgoing and sometimes flirted with female the officers. (*Id.*)

In any event, Officer Henry testified that Officer James made comments such as "Come sit on daddy's lap" or "Let daddy give you a massage" and constantly referred to her as "bitch." (*Id.* at ¶ 47.) Also, Officer Henry testified that Officers James and Green made remarks about other female officers including comments about their breasts. (*Id.* at ¶ 49.) At one time, Officer Green asked Officer Henry if she was "hiding a dick in her pants." (*Id.* at ¶ 53.)

On May 14, 2001, while working with Officers James, Green, and Williams at the Rainbow Beach Park Field House, Officer James pulled Officer Henry from her chair causing her to fall to the floor. (Pl.'s Stmt. at ¶ 11.) Officer James then straddled her from behind and began moaning in a sexually suggestive manner. (*Id.*) While he was on top of her, Officer James asked Officer Henry: "Have you ever been fucked where you came four times in a row?" (Pl.'s Stmt. Add'l Facts at ¶ 55.) At that time, Officer Green made no attempt to intervene and Officer Williams had to pull Officer James off of Officer Henry. (Pl.'s Stmt. at ¶ 12.) After the incident,

Officer Green did not notify any supervisor of the incident and failed to prepare a written report of the incident to his Commanding Officer in violation of CPD's General Order 93-3. (*Id.*)

Chicago Park District employee, Mary F. Smith, witnessed the Park Field House incident. (*Id.* at ¶ 13.) Smith related the following account:

> I noticed one of the female officers was sitting in the chair talking on the telephone and one of her male counterparts was kept [sic] talking to her while she was on the phone. I noticed she kept telling him to stop and the more she said stop the louder he got. I also notivced [sic] that he kept pushing the chair in which she was sitting. At this time, I went back in my office and came back out maybe ten, fifteen seconds later, it wasn't long at this time I noticed the female officer was on the floor beside the chair and the male officer was straddling her across her back, and he had her hair in his left hand .... He was making a spanking motion with his right hand and at this time I went back into my office. When I came back again she was back in the chair but she was very angry.... She kept telling him to stop and leave me alone.

(*Id.*) Officer Williams also corroborated Officer Henry's allegations regarding the incident at the Park Field House. (*Id.* at ¶ 15.) Specifically, Officer Williams stated that Officer James grabbed Officer Henry's legs, placed them on his shoulder, and made her fall out of the chair onto the floor. (*Id.*) While Officer Henry was on the floor, Officer James positioned himself behind her in a doggy style. (*Id.*)

On May 15, 2001, Officer Henry reported to her supervisor, Sergeant Richards, that Officers Green and James had been harassing her. (*Id.* at ¶ 14.) After Officer Henry informed Sergeant Richards of the alleged sexual harassment, Sergeant Richards registered a Complaint Register (C.R.) No. 271398 with the Office of Professional Standards, submitted a To/From report, and informed the Watch Commander. (*Id.* at ¶ 16.) Sergeant Richards also advised Officers James and Green that a C.R. had been obtained against them in connection with Officer Henry's sexual harassment allegations. (*Id.* at ¶¶ 18, 19.) Sergeant Richards, however, did not

tell Officers Green or James to discontinue the alleged harassment, nor did Sergeant Richards tell Officer James that his conduct was inappropriate. (*Id.* at ¶¶ 19, 20.) Furthermore, Sergeant Richards never instructed Officers James and Green not to speak to Officer Henry. (*Id.* at ¶ 21.)

On May 16, 2001, Agent Charles Breckenridge of the Internal Affairs Division received Officer Henry's C.R., and thereafter, notified the Equal Employment Opportunity ("EEO") Officer, Sergeant Kathleen Boehmer. (Pl.'s Stmt., ¶¶ 26, 27.) Sergeant Boehmer then sent a memorandum to Commander Lamont Thompson in the Fourth District explaining sexual discrimination law under Title VII. (*Id.* at ¶ 28, Ex. 7, at 01214-215; Def's Stmt. ¶ 18.) Sergeant Boehmer also requested a summary of interim measures that Commander Thompson had taken or was planning to take to ensure that any future harassment or retaliation did not occur. (*Id.*) On June 5, 2001, Commander Thompson responded to Sergeant Boehmer's memorandum stating "the alleged 'offending' officers have been reassigned to another assignment. Of course as you are aware, due to contractual constraints their watch could not be changed." (Pl.'s Stmt., Ex. 7, at 01218; Def's Stmt. ¶ 19.) Commander Thompson also stated that the R/Commander and Watch Commander "talked to Officers James and Green regarding their behavior and tried to explain the seriousness of Officer Henry's complaint." (*Id.*)

Meanwhile, Officer Henry testified that the day after the Park Field House incident, she was on bike patrol and Officer James yelled "I'm going to kick that bitch's ass." (Pl.'s Stmt. ¶¶ 30, 31, Ex. A, at 129-130; Def.'s Stmt. ¶ 13.) Officer Henry reported this additional comment to Sergeant Charles Popielarz, along with Officer James' statement to other police officers that they should be careful what they say or Officer Henry would get a C.R. number on them. (Pl.'s Stmt. ¶ 31, Ex. 7, at 00912.) Furthermore, Officer Henry reported to Sergeant Popielarz that Officer

4

James made similar comments on the police radio. (*Id.*) According to Sergeant Popielarz's report, Officer Williams verified Officer Henry's report of the incident in which Officer James yelled "I'm going to kick that bitch's ass." (*Id.* at ¶ 32.)

Nearly three months after the Park Field House incident, Agent Breckenridge of the Internal Affairs Division notified Officer James that due to the "nature of the allegation" his police powers were being temporarily suspended, he was to be temporarily reassigned out of the Fourth District, he was not to have any contact with Officer Henry, and he was to obey any orders given to him by his commanding officer. (*Id.* at ¶ 43; Def.'s Stmt. at ¶ 23.) The investigation into Officer Henry's allegations ended in February 2002, yet the CPD never informed Officer Henry of the investigation's outcome. (Pl.'s Stmt. ¶¶ 44, 47; Def.'s Stmt. ¶ 24.)

## II.   SUMMARY JUDGMENT STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *See Vukadinovich v. Board of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir.

2002) (quotation and citation omitted). On cross-motions for summary judgment, the Court construes all inferences in favor of the party against whom the motion under consideration is made. *Allen v. City of Chicago,* 351 F.3d 306, 311 (7th Cir. 2003).

## III. ANALYSIS

Officer Henry alleges sexual discrimination in violation of Title VII. Specifically, she alleges a hostile work environment theory based on the actions of her non-managerial co-workers.[2] Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Accordingly, Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

To prevail on her hostile work environment claim, Officer Henry must establish that: (1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the sexual harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (4) there is a basis for employer liability. *McPherson v. City of Waukegan,* 379 F.3d 430, 437-38 (7th Cir. 2004). Courts have often found it challenging to precisely define what constitutes a hostile work environment under

---

[2] The City argues that Officer Henry has not established a disparate treatment claim under Title VII because she did not suffer an adverse employment action and cannot establish that a similarly situated male employee was treated more favorably than she. Officer Henry, however, did not allege a disparate treatment claim in her First Amended Complaint. Therefore, the Court need not address these arguments.

6

the third prong of this test. *See Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001). The Seventh Circuit, however, has provided the following guidance: "On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) (internal citations omitted).

### A. Hostile Work Environment

Officer Henry contends that she has set forth unrefuted evidence which establishes that a hostile work environment existed as a matter of law. The City, on the other hand, argues that Officer Henry has not established a genuine issue of material fact that a hostile work environment existed in the first instance. To qualify as hostile, a work environment must be objectively and subjectively offensive, *i.e.*, it must be a work environment that a reasonable person would find hostile or abusive, and one that the victim in fact perceived to be hostile or abusive. *See McPherson*, 379 F.3d at 438. "In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976-77 (7th Cir. 2004).

Here, Officer Henry has presented evidence upon which a reasonable jury could find that Officers James' and Green's conduct was sufficiently severe or pervasive to create a hostile work environment. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91

L.Ed.2d 49 (1986). Specifically, she has presented undisputed evidence that Officer James pushed her out of her chair, pulled her hair, straddled her on the floor, and asked her "Have you ever been fucked where you came four times in a row?" while Officer Green watched, but did not intervene. The Rainbow Beach Park Field House incident is not the only evidence Officer Henry has presented in support of her hostile work environment claim – she has presented deposition testimony that Officers Green and James subjected her to unwelcome and offensive comments on a daily basis that included "sexual talk." Their co-worker, Officer Williams, corroborates this evidence. Furthermore, there is evidence in the record that Officers Green and James made sexually suggestive comments about and to other women officers.[3] Finally, Officer Henry has set forth evidence of allegedly hostile or abusive conduct that occurred after the Park Field House incident, including threats made by Officer James.

Further, the Court rejects the City's argument that from an objective perspective, Officers James' and Green's comments do not rise to a level of a hostile work environment. The City bases its argument on the fact that Officer Henry is relying on the single, isolated incident that occurred at the Park Field House. The undisputed facts, however, do not support the City's contention. Instead, Officer Henry has presented evidence that Officer James made numerous sexual and threatening comments to her on a daily basis, including "Come sit on daddy's lap" and "I'm going to kick that bitch's ass." There is also evidence that Officer Green made sexual comments as well, including asking Officer Henry whether she was "hiding a dick in her pants." In sum, the Officers' comments and conduct in tandem with Officer James physically pushing

---

[3] The City's argument that the Court need not consider Officers Green's and James' conduct that occurred prior to the Rainbow Beach Park Field House incident is not supported by the City's citation to *Durkin v. City of Chicago,* 341 F.3d 606, 611 (7th Cir. 2003).

8

Officer Henry on the floor and positioning himself behind her in a doggy style raise a genuine issue of material fact as to whether an reasonable person would find Officer Henry's work environment hostile or abusive.

### B. Basis for City's Liability

Next, the City contends that Officer Henry cannot establish a basis for employer liability. Officer Henry, however, is entitled to reach a jury if she has competent evidence that the CPD was negligent in either discovering or remedying the harassment directed at her by her co-workers. *See Wyninger*, 361 F.3d at 976. The Court's focus is not simply whether the remedies ultimately succeeded, but whether the employer's response to the sexual harassment allegations was "reasonably calculated to prevent further sexual harassment under the particular facts and circumstances at the time the allegations are made." *See Wyninger*, 361 F.3d at 976 (citation omitted). Whether a response is reasonable depends on the gravity of the harassment. *Longstreet v. Illinois Dept. of Corrections*, 276 F.3d 379, 382 (7th Cir. 2002); *see also Baskerville*, 50 F.3d at 432 ("an employer is required to take more care, other things being equal, to protect its female employees from serious sexual harassment than to protect them from trivial harassment").

Although the CPD had a sexual harassment policy and procedures in place at the time of Officer Henry's allegations, Officer Henry has presented competent evidence that the CPD was negligent in remedying the sexual harassment directed at her by Officer Green and James. For example, there is evidence in the record that after Officer Henry complained to her supervisor, Sergeant Richards, he did not tell Officers Green or James to discontinue the alleged harassment, that their conduct was inappropriate, or that they should not talk to Officer Henry. In fact, it took

the Internal Affairs Division approximately three months to instruct Officer James not to have any contact with Officer Henry after her initial complaint. In addition, Officer Henry has presented evidence that after she complained to Sergeant Richards, her work conditions worsened due to Officer James' threatening comments. Finally, there is evidence in the record that the CPD never informed Officer Henry of the C.R. investigation's outcome. Based on the gravity of the alleged harassment, which includes allegations of unwanted, physical contact, the Court concludes that Officer Henry has raised a genuine issue of material fact as to whether the CPD's response to her sexual harassment allegations was reasonable under the circumstances.

## IV. CONCLUSION

For these reasons, the Court denies both the Plaintiff's and Defendants' motions for summary judgment.

Dated: December 7, 2004

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**